UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEITH JONES, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-00650-JMS-DML |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT OF DECA- | ) | |
| TUR TOWNSHIP, JON BAILEY, BOSE MCKIN- | ) | |
| NEY & EVANS, and JEFFREY BAER, | ) | |
|     *Defendants*. | ) | |

## ORDER

Presently before the Court in this employment matter are a Motion for Judgment on the

Pleadings, [dkt. 18], and a Motion for Sanctions, [dkt. 23], both filed by Defendants Metropoli-

tan School District of Decatur Township ("MSD"), Donald Stinson, Susan Adams,[1] Dr. Jeffrey

Baer, Jon Bailey, and Bose McKinney & Evans ("the Bose Firm").  For the foregoing reasons,

the Court grants the motions in part and denies them in part.

### I.
### BACKGROUND

Mr. Jones was employed by MSD as a school police officer from August 1996 until his

termination in June 2010.  [Dkt. 6 at 1-2, ¶ 4, 12.]  Mr. Jones is a Law Enforcement Officer, cer-

tified by the Indiana Law Enforcement Training Board.  [*Id.* at 3, ¶ 14.]  In his position at MSD,

Mr. Jones performed general police patrol and school security duties and could make arrests

through special provision with the Marion County Sheriff's Department.  [*Id.* at 2, ¶ 12.]  He was

the only afternoon shift patrol officer assigned at MSD, working from 3:00 p.m. to 11:00 p.m.

[*Id.* at 3, ¶ 13.]

---

[1] Mr. Jones voluntarily dismissed Mr. Stinson and Ms. Adams after oral argument on the pending
motions, and they are no longer parties to the lawsuit.  [Dkt. 32.]

Prior to his discharge, Mr. Jones' supervisor, Chief David Kinsey, informed him that MSD's administration was considering eliminating the afternoon shift police officer position, which would lead to Mr. Jones' termination.  [*Id.* at 3, ¶ 16.]  Chief Kinsey also advised Mr. Jones that Dr. Jeffrey Baer, one of the assistant school superintendents, was "adamant about the elimination" of the position.  [*Id.*]  Chief Kinsey noted that he believed eliminating the afternoon shift police officer position was "a dangerous idea, given the amount of crime in [and] around the MSD's main campus and other school properties during the late afternoon and evening."  [*Id.* at 3, ¶ 17.]

On June 30, 2010, MSD terminated Mr. Jones' employment.  [*Id.* at 3, ¶ 18.]  Mr. Jones received a formal letter from MSD in mid-July, stating that the School Board had voted to terminate Mr. Jones' employment due to "fiscal restructuring."  [*Id.* at 3-4, ¶ 19.]  Mr. Jones alleges that around July 30, 2010, "certain administrators received close to a million dollars in perks disguised as 'savings' in the future."  [*Id.*]  Mr. Jones claims that he "was on good terms with the school administrators, staff and students" and "was never brought in for any sort of employee corrective counseling all during the time of his employment."  [Dkt. 6 at 3, ¶ 15.]

On January 4, 2011, Mr. Jones filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that MSD had discriminated against him based on his age when it terminated his employment.  [*Id.* at 4, ¶ 22.]  The EEOC Charge eventually resulted in Mr. Jones filing a lawsuit against MSD alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA") ("the ADEA/ADA Lawsuit").

[Dkt. 1 in *Jones v. Metropolitan School Dist. Of Decatur Township*, 1:11-cv-0973-SEB-MJD.][2] The ADEA/ADA Lawsuit and the EEOC Charge related to Mr. Jones' allegation that MSD terminated his employment because he is a cancer survivor and had been "red-flagged" by MSD's insurance carrier.  [*Id.* at 5, ¶ 21.]

On January 19, 2011, Dr. Baer was "recalled from retirement" to write a letter for Mr. Jones' personnel file which stated that he did not believe Mr. Jones was a good employee and that MSD had several problems with him during his employment including: (1) "[p]articipating in and starting damaging rumors about fellow employees"; (2) being "very negative about the district"; and (3) "misusing a corporation vehicle" by being seen outside of the district during his shift in that vehicle ("the Baer Letter").  [Dkts. 6 at 4, ¶ 23; 6-1 at 1.]  Mr. Jones claims that he "had no previous write ups in his tenure" at MSD.  [Dkt. 6 at 4, ¶ 23.]

Subsequently, through his representation of MSD in the EEOC proceeding, Attorney Jon Bailey of the Bose Firm wrote a letter to the EEOC to respond to the EEOC Charge on MSD's behalf.  [*Id.* at 6, ¶ 45.]  In the letter, Mr. Bailey referred to the Baer Letter, attached it as an exhibit, noted that Dr. Baer's reasons for selecting Mr. Jones for termination were set forth in the Baer Letter, and stated that Mr. Jones' job performance was "less than satisfactory."  [Dkt. 6-2 at 2-3.]

Based on MSD's response to the EEOC Charge, and Mr. Bailey's and the Bose Firm's representation of MSD in that proceeding, Mr. Jones filed the instant lawsuit on May 14, 2012, [dkt. 1], and the operative Amended Complaint on May 19, 2012, [dkt. 6].  Along with MSD, Dr. Baer, Mr. Bailey, and the Bose Firm, Mr. Jones also named Susan Adams and Donald Stinson,

---

[2] "[A] district court can 'take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.'"  *Matthews v. Capital One Bank*, 2008 U.S. Dist. LEXIS 90157, *6 (S.D. Ind. 2008).

two MSD employees, as defendants.  [*Id.*]  Mr. Jones alleged the following claims: (1) retaliation under the ADEA and § 1981 against MSD, Ms. Adams, Mr. Stinson, and Dr. Baer, [dkt. 6 at 4-5, ¶¶ 20-29]; (2) civil conspiracy against Ms. Adams, Mr. Stinson, and Dr. Baer, [*id.* at 5-8, ¶¶ 30-43]; (3) attorney deceit against Mr. Bailey and the Bose Firm, [*id.* at 8-9, ¶¶ 44-49]; (4) intentional infliction of emotional distress against all defendants, [*id.* at 9, ¶¶ 50-54]; and (5) defamation per se against MSD and Dr. Baer, [*id.* at 9-10, ¶¶ 55-68.]  After briefing on the pending motions, and after oral argument on those motions, Mr. Jones abandoned all claims under § 1981, his civil conspiracy claim, his intentional infliction of emotional distress claim, his defamation claim against MSD, all claims against Ms. Adams and Mr. Stinson, and his ADEA retaliation claim against all individual defendants.  [Dkts. 32; 34.]  Accordingly,  the three remaining claims are: retaliation under the ADEA against MSD, attorney deceit against Mr. Bailey and the Bose Firm, and defamation per se against Dr. Baer.

## II.
### MOTION FOR JUDGMENT ON THE PLEADINGS

### A.  Standard of Review

To survive a motion for judgment on the pleadings directed to the sufficiency of the complaint, a plaintiff must do two things:  the plaintiff "must provide…enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted).  In deciding whether the plaintiff has accomplished those tasks, the Court assumes the truth of the nonconclusory allegations in the complaint and gives the plaintiff the benefit of the inferences from the allegations.  *Id.* at 1081 (citations omitted).

**B.  Discussion**

*1.  ADEA Retaliation Claim*

In support of its Motion for Judgment on the Pleadings regarding Mr. Jones' ADEA retal-iation claim, MSD argues that Mr. Jones has not stated a claim for retaliation because: (1) having Dr. Baer write the Baer Letter in response to the EEOC Charge and placing the Baer Letter in Mr. Jones' personnel file are not adverse actions, [dkt. 19 at 9-10]; and (2) Mr. Jones has not suf-ficiently alleged that there is a causal connection between Mr. Jones' filing of the EEOC Charge and the placement of the Baer Letter in Mr. Jones' personnel file, [dkt. 26 at 7].

Mr. Jones argues in response that he has alleged a prima facie case of retaliation, includ-ing that: (1) he was engaged in statutorily protected activity (filing the EEOC Charge); (2) he suffered adverse actions when Dr. Baer wrote the Baer Letter and it was placed in his personnel file; and (3) the temporal proximity between the filing of the EEOC Charge and the Baer Letter shows a causal relation between the two.  [Dkt. 22 at 4-7.]  He also asserts that the fact that he had never been disciplined during his employment and that the "alleged misconduct in [the Baer Letter] is a mere fabrication" are further indications that the two events are causally related.  [*Id.* at 7-8.]

The ADEA prohibits retaliation by an employer in response to an employee filing a charge with the EEOC.  29 U.S.C. § 623(d).  *See also Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (finding filing of EEOC charge followed by termination could support ADA retaliation claim if causal relationship between the two events could be established).  To state a claim for retaliation, the plaintiff must allege that: "(1) he or she engaged in a statutorily protect-ed activity; (2) he or she suffered an adverse action; and (3) a causal link between the protected activity and the adverse action [exists].'"  *Richmond-Jeffers v. Porter Twp. Sch.  Corp.*, 2012

U.S. Dist. LEXIS 67742, *29 (N.D. Ind. 2012).  "[R]etaliation must be a but-for cause of a mate-rially adverse action, not merely a contributing factor."  *Meade v. Kroger*, 2012 U.S. Dist. LEX-IS 32678, *43 (N.D. Ind. 2012) (citations omitted).

### a.  Statutorily Protected Activity

It is well-settled that the filing of an EEOC charge is considered a statutorily protected activity for purposes of asserting an ADEA retaliation claims.  *See, e.g., Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012).  *See also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 533 (7th Cir. 2003) (holding there is "no dispute that [the plaintiff] satisfied the first element by filing her EEOC charge").  MSD does not dispute that Mr. Jones has met this first requirement, so the Court moves on to the second and third requirements of an ADEA retaliation claim.

### b.  Adverse Action

MSD argues that Mr. Jones has not alleged he suffered any adverse action from either Dr. Baer's writing of the Baer Letter or its placement in his personnel file because his claims of harm from the placement of the Baer Letter in his personnel file are too speculative, a negative per-formance evaluation does not constitute an adverse employment action, and the Baer Letter was conduct occurring within the course of litigation so was not an adverse employment action. [Dkt. 26 at 5-7.]  Mr. Jones asserts that the Baer Letter and its placement in his personnel file could, "[g]iven the current economic climate…have a devastating effect on a person seeking em-ployment since only very few employers are willing to hire someone labeled as a bad employee," [dkt. 22 at 6], and, accordingly, it was an adverse action.

When considering whether an employee suffered an adverse action in the ADEA retalia-tion context, "[t]he standard for a materially adverse action sufficient for a retaliation claim is

somewhat more forgiving than for a discrimination claim, but the action must be severe enough to dissuade a reasonable employee from exercising statutory rights." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 456 (7th Cir. 2011). An adverse action is "'one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Silverman v. Bd. of Educ.*, 637 F.3d 729, 740 (7th Cir. 2011) (*quoting Roney v. Ill. DOT*, 474 F.3d 455, 461 (7th Cir. 2007)). Examples of adverse actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Barton*, 662 F.3d at 456 (citation omitted). Here, Mr. Jones argues that he suffered two adverse actions – MSD's "calling in Dr. Baer…to write a negative performance letter,"[3] [dkt. 6 at 4, ¶ 26], and "inserting [the Baer Letter] in his personnel file," [*id.* at 5, ¶ 28].

The Seventh Circuit Court of Appeals has instructed that "it [is] the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [anti-discrimination statutes]." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (in Title VII and ADA retaliation case, holding that an "absolute litigation privilege" is too broad because there are some actions taken in the course of litigation that "could conceivably constitute retaliation," such as filing malicious prosecution action against employee who had filed unfair labor practice charges, or bringing forgery charges against former employee in order to punish employee for filing discrimination charge, but that conduct occurring within the scope of litigation

---

[3] Although Mr. Jones' counsel appeared to concede at oral argument that the creation of the Baer Letter was privileged because it was part of the EEOC proceeding, and limit the ADEA retaliation claim to placement of the Baer Letter in Mr. Jones' personnel file, the Court will nevertheless address whether writing the Baer Letter and submitting it in the EEOC proceeding could form the basis of an ADEA retaliation claim.

rarely constitutes retaliation).  The Court finds that the writing of the Baer Letter is not an adverse action because it was written in the course of litigation, and in direct response to Mr. Jones' EEOC Charge.  *Id.* at 1076 (employer who advised former employee's new employer of employee's discrimination lawsuit and her sensitivity to chemicals used at new employer's facility did not engage in retaliation where exchange of information took place during course of discovery – result may have been different if statements were made "without any apparent legitimate justification").  *See also Hofmann v. Aspen Dental Mgmt.*, 2011 U.S. Dist. LEXIS 45575, *2-4 (S.D. Ind. 2011) (threats of future litigation made in briefs filed in Fair Labor Standards Act lawsuit did not constitute adverse actions which would support retaliation claim).[4]

MSD's placement of the Baer Letter in Mr. Jones' personnel file, however, may be a different story.  Placing the Baer Letter in Mr. Jones' personnel file did not relate to MSD's response to the EEOC Charge.  Further, although Mr. Jones was no longer an employee when the Baer Letter was placed in his file, he need not have been a current employee to be protected under the retaliation provision of the ADEA.  *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 884-85 (7th Cir. 1996).  Once an employee has been terminated, he may still have an ADEA retaliation claim based on his former employer's efforts to "blacklist" the former employee or otherwise affect his ability to secure future employment.  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("plaintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the

---

[4] To the extent the Baer Letter can be considered a negative performance evaluation, even though it was written after Mr. Jones' termination, the Court notes that "a negative performance evaluation could constitute an adverse action…."  *Silverman,* 637 F.3d at 741.  However, "context matters to the determination of what constitutes a materially adverse action," *Id.*, and the Court finds that the Baer Letter is more properly characterized as prepared in response to the EEOC Charge, and not as a traditional "performance evaluation."

former employee,…wrongfully refuses to write a recommendation to prospective employers,…or sullies the plaintiff's reputation….") (citations omitted).[5]

Although Dr. Baer wrote the Baer Letter in response to Mr. Jones' EEOC Charge, the placement of the Baer Letter in Mr. Jones' personnel file was an act separate from defending against the EEOC Charge.  The Court cannot conclude at this stage of the litigation – when it is required to give Mr. Jones the benefit of the doubt regarding his allegations – that placement of the Baer Letter in Mr. Jones' personnel file was not an adverse action which would support an ADEA retaliation claim.

### c.  Causal Connection

The third requirement for maintaining an ADEA retaliation claim is that there is a causal connection between the statutorily protected activity – here, Mr. Jones' filing of the EEOC Charge – and the adverse action – here, MSD's placement of the Baer Letter in Mr. Jones' personnel file.  MSD argues that the temporal proximity between the filing of the EEOC Charge and the Baer Letter is meaningless because the Baer Letter was necessarily close in time to the filing

---

[5] MSD's reliance on *Probst v. Ashcroft*, 25 Fed. Appx. 469 (7th Cir. 2001), for the proposition that the harm Mr. Jones alleges is too speculative to support an ADEA retaliation claim, [dkt. 26 at 5-6], is misplaced.  There, the Seventh Circuit found that allegations that a DEA agent still employed by the DEA might lose credibility in future investigations based on documents in his file were too speculative because, in order to be harmed, the agent would have to work on another case, the case would have to go to trial, and he would have to be called to testify.  *Id.* at 471-72.  Then, if the documents in his file were relevant, and if defense counsel decided to impeach him, he might lose credibility, and might not be able to testify or work on cases or investigations.  *Id.*  Conversely, due to his termination, Mr. Jones was faced with the real prospect of searching for another job.  The possibility of a future employer becoming aware of the Baer Letter in his personnel file and factoring it into the hiring decision is not nearly as remote as the harm alleged in *Probst*.  Other cases cited by MSD are similarly inapposite.  *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (alleged future harm to employee's ability to pursue alternative career path "rest[ed] on little more than [the employee's] own, untested belief that she could remake herself as a private academic," and did not constitute an adverse employment action); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir. 2001) (negative job performance memoranda placed in personnel file did not constitute adverse employment actions – employee was still employed and had not lost pay or benefits or been disciplined).

of the EEOC Charge since it was written in response to the Charge.  [Dkt. 26 at 7.]  It also asserts

that any argument that Dr. Baer's statements in the Baer Letter are false goes to Dr. Baer's cred-

ibility, which is an issue for trial.  [*Id.*]  Mr. Jones relies heavily upon the temporal proximity ar-

gument, but also notes that other arguments, including that he was never disciplined during his

employment, and that the "alleged misconduct in [the Baer Letter] is a mere fabrication," should

not be foreclosed at this early stage in the litigation.  [Dkt. 22 at 7-8.]

Generally, "suspicious 'timing alone is insufficient to establish a genuine issue of materi-

al fact to support a retaliation claim.'"  *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir.

2010) (*quoting Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007)).  But, while the

timing of the EEOC Charge and placement of the Baer Letter in Mr. Jones' personnel file would

not be enough standing alone to allege the requisite causal connection, the Court finds that Mr.

Jones' additional allegations relating to his record while an MSD employee and the truth or falsi-

ty of the statements in the Baer Letter are enough to survive MSD's Motion to Dismiss.  The

Court notes, however, that Mr. Jones will ultimately need to show that placement of the Baer

Letter in his personnel file caused him some harm – *e.g.*, in the form of a prospective employer

seeing the letter and deciding not to hire him.  *See, e.g., Glanzman v. Metro. Mgmt. Corp.*, 391

F.3d 506, 516 (3d Cir. 2004) (summary judgment in favor of former employer affirmed where

plaintiff could not show allegedly retaliatory action caused any harm).  Whether his allegations

will prove true and will be enough to support the elements of a successful ADEA retaliation

claim, however, is more appropriately decided at the summary judgment stage when the evidentiary record has been fully developed.[6]

Accordingly, the Court denies MSD's Motion to Dismiss Mr. Jones' ADEA retaliation claim, but only to the extent it relates to MSD's placement of the Baer Letter in Mr. Jones' personnel file. The ADEA retaliation claim based on Dr. Baer's creation of the Baer Letter and MSD's submission of that letter in the course of the EEOC proceeding is dismissed.

### 2. Attorney Deceit Claim

Mr. Jones alleges that Mr. Bailey and the Bose Firm have violated Indiana Code § 33-43-1-8. [Dkt. 6 at 8-9, ¶¶ 44-49.] Specifically, he claims that Mr. Bailey wrote a letter to the EEOC in response to Mr. Jones' EEOC Charge, which repeated the "lie" in the Baer Letter "either purposely or negligently," and which falsely stated that Chief Kinsey and Dr. Baer made the decision not to rehire him when MSD later decided to hire someone for the afternoon shift school police officer position. [Dkt. 6 at 8, ¶ 45.] Mr. Jones further alleges that Mr. Bailey was "negligent" in failing to adequately investigate the assertions in the Baer Letter, and that the Bose Firm was "negligent" in its supervision of Mr. Bailey. [*Id.* at 8, ¶¶ 46-47.]

Mr. Bailey and the Bose firm argue that Mr. Jones has not alleged they intended to deceive anyone, nor has he alleged that he relied on any of their statements or was induced to act to

---

[6] For example, while Mr. Jones alleges that "[a]s a result of Defendant's conduct, [he] has suffered economic and other damages," [dkt. 6 at 5, ¶ 29], he alleges elsewhere in the Amended Complaint that he does not know whether anyone has seen the Baer Letter at all, [*id.* at 5-6, ¶¶ 28, 35]. While the Court believes that Mr. Jones is entitled to pursue discovery relating to that issue, that discovery may reveal that the Baer Letter has not been disclosed outside of the EEOC proceeding and, thus, Mr. Jones has not suffered an adverse employment action nor any damages. *Hollowell v. Int'l Mill Serv.*, 66 Fed. Appx. 631, 635 (7th Cir. 2003) (granting summary judgment on ADEA retaliation claim where the alleged retaliation did not amount to adverse action since "there is no evidence that [the employer] ever provided information about [the employee's] lawsuit or his job performance to [the employee's] actual potential employers, or that, if they had, the potential employer would have acted upon that information to [the employee's] detriment").

his injury or damage based on those statements.  [Dkt. 19 at 16.]  Mr. Bailey and the Bose Firm

also assert that the statements in the Baer Letter to the EEOC are privileged as statements made

during the course of litigation.  [*Id.*]  Mr. Jones does not respond to Mr. Bailey's and the Bose

Firm's specific arguments, instead merely re-stating that Mr. Bailey "intentionally or recklessly

made such false statement with intent to deceive," and that he has "pleaded sufficiently [sic]

facts to pass judgment on the pleadings."  [Dkt. 22 at 11.]

> Indiana Code § 33-43-1-8 provides that:
>
> (a) An attorney who is guilty of deceit or collusion, or consents to deceit or collu-
> sion, with intent to deceive a court, judge, or party to an action or judicial pro-
> ceeding commits a Class B misdemeanor.
>
> (b) A person who is injured by a violation of subsection (a) may bring a civil ac-
> tion for treble damages.

In order to maintain a claim under § 33-43-1-8, a plaintiff must establish "that a represen-

tation was made as a statement of fact, which was untrue and known to be untrue by the party

making it, or else recklessly made; that it was made with intent to deceive and for the purpose of

inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby

to act to his injury or damage."  *Harris v. Denning*, 900 N.E.2d 765, 769 (Ind. Ct. App. 2009).

Even assuming that § 33-43-1-8 provides a separate cause of action (Mr. Bailey and the Bose

Firm argue that it does not), that Mr. Bailey made untrue statements of fact in his letter to the

EEOC, that he knew them to be untrue or recklessly made them, and that he intended to deceive

someone through those statements, and even assuming that the Bose Firm could potentially be

liable as Mr. Bailey's employer, Mr. Jones' claim still fails.  Mr. Jones' allegations are woefully

inadequate because he has not alleged – nor does he even argue that he has alleged – that he re-

lied on Mr. Bailey's statements in the letter and was somehow induced to act to his injury or

damage.  These two key requirements are nowhere to be found and, accordingly, Mr. Jones' attorney deceit claim under § 33-43-1-8 fails as a matter of law.[7]

### 3. *Defamation Per Se Claim*

Mr. Jones asserts a defamation per se claim against Dr. Baer, alleging that Dr. Baer was "acting as an agent of [MSD]" when he wrote the Baer Letter and that he "defam[ed] [Mr. Jones] as a bad employee and thus injur[ed] [his] reputation."  [Dkt. 6 at 10, ¶¶ 56, 58.]  Further, Mr. Jones alleges that Dr. Baer knew the statements were false, or made them with reckless disregard as to their truth or falsity or with negligence.  [*Id.* at 10, ¶ 57.]  He asserts that the statements "injured [him] in his profession."  [*Id.* at 10, ¶ 60.]

In support of his Motion to Dismiss, Dr. Baer argues that he is immune from Mr. Jones' defamation claim under Indiana law, because Mr. Jones alleges Dr. Baer was acting within the scope of his employment when he wrote the Baer Letter.  [Dkt. 19 at 18-19.]  Dr. Baer also argues that Mr. Jones' allegations are too vague to withstand the Motion for Judgment on the Pleadings – specifically, that he has not alleged that the Baer Letter was distributed to anyone, or that Dr. Baer misstated any facts.  [*Id.* at 21-22.]  Mr. Jones responds by asserting that Dr. Baer is not immune from suit because he was retired when he wrote the Baer Letter, [dkt. 22 at 12], and that the statements in the Baer Letter are defamatory per se because they "imputed professional misconduct," [*id.*].

In order to prevail on a claim for defamation under Indiana law, a plaintiff must satisfy four elements: "(1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages."  *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007).  A com-

---

[7] Because Mr. Jones fails to allege these two elements of an attorney deceit claim, the Court need not address whether the claim is barred in any event by the common-law privilege related to statements made during the course of litigation.

munication is considered defamation per se if it imputes "(1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Id.* If a communication is considered defamatory per se, the plaintiff need not prove actual harm to reputation – damages are presumed. *Id.*

The Court finds at the outset that, based on the allegations of the Amended Complaint, Dr. Baer is not immune from Mr. Jones' defamation claim under § 34-13-3-5(b), which provides that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." While Mr. Jones alleges that Dr. Baer was acting "as an agent of [MSD]," [dkt. 6 at 10, ¶ 58], this does not equate to an allegation that Dr. Baer was acting within the scope of his employment for purposes of § 34-13-3-5(b) immunity. To the contrary, Mr. Jones alleges that Dr. Baer had retired from MSD. [*Id.* at 2, ¶ 8.]

The Court now turns to whether Mr. Jones had adequately pleaded a claim for defamation per se. The Court finds that, regardless of whether the alleged statements in the Baer Letter are considered defamatory per se, Mr. Jones has not adequately alleged that the statements were ever published by Dr. Baer. At oral argument, Mr. Jones' counsel conceded that "publishing" the Baer Letter in the course of the EEOC proceeding was privileged. Accordingly, the only "publication" Mr. Jones could base his defamation claim on is the placement of the Baer Letter in his personnel file. But Mr. Jones does not allege that Dr. Baer was responsible for placing the Baer Letter in his personnel file.

To the contrary, and presumably to avoid Dr. Baer's immunity argument, Mr. Jones alleges that Dr. Baer was not an MSD employee when he wrote the letter, but rather was retired. Mr. Jones cannot have it both ways: he cannot base his defamation claim on Dr. Baer's place-

ment of the Baer Letter in his personnel file, while also alleging that Dr. Baer was not an em-
ployee of MSD at that time.  For this reason, the Court finds that Mr. Jones has not adequately
alleged that Dr. Baer "published" the Baer Letter by placing it in his personnel file.[8]  According-
ly, his defamation per se claim is dismissed.

In sum, Defendants' Motion for Judgment on the Pleadings is denied only as it relates to
Mr. Jones' claim for ADEA retaliation based on MSD's placement of the Baer Letter in Mr.
Jones' personnel file.  Defendants' motion is granted as to all other claims.

## III.
### MOTION FOR SANCTIONS

Defendants have also filed a Motion for Sanctions, [dkt. 23], seeking attorneys' fees and
other expenses they incurred in responding to the Amended Complaint.  For the reasons dis-
cussed below, the Court grants that motion in part and denies it in part.

### A.  Standard of Review

#### 1.  28 U.S.C. § 1927

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any
case unreasonably and vexatiously may be required by the court to satisfy personally the excess
costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The purpose
of § 1927 is to "deter frivolous litigation and abusive practices by attorneys and to ensure that
those who create unnecessary costs also bear them."  *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d

---

[8] The Court notes a certain irony in Mr. Jones' defamation claim:  While Mr. Jones complains
that disclosure of the Baer Letter would be detrimental to his future employment prospects and
seeks to hold Dr. Baer liable for any potential publication, Mr. Jones himself has made the Baer
Letter a matter of public record by bringing this lawsuit and attaching a copy of the Baer Letter
to his original Complaint filed on May 14, 2012.  [Dkt. 1-1.]  Mr. Jones moved to seal the Baer
Letter when he attached it to his Amended Complaint, [dkt. 10], but waited fifteen days after fil-
ing the Amended Complaint to do so.  Additionally, he has yet to move to seal the letter as it is
attached to his original Complaint, thus leaving it viewable by the public.  [Dkt. 1-1.]

832, 835 (7th Cir. 2005) (citations omitted).  An award under § 1927 is compensatory, not puni-

tive.  *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d

746, 749 (7th Cir. 2009).

Bad faith is required for a § 1927 award, but there is a distinction between subjective and

objective bad faith.  *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006).  Subjec-

tive bad faith, which is more difficult to prove, is not always necessary and "must be shown only

if the conduct under consideration had an objectively colorable basis."  *Id.*  Objective bad faith

does not require a finding of malice or ill will; instead, reckless indifference to the law will quali-

fy.  *Id.*  The Court has discretion to impose § 1927 sanctions when an attorney has acted in an

"objectively unreasonable manner" by pursuing a claim that is without a plausible legal or factu-

al basis.  *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).  Addition-

ally, § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer via-

ble."  *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201, n.6 (7th Cir. 1990).

    2.  *Rule 11*

Federal Rule of Civil Procedure 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper – whether by
> signing, filing, submitting, or later advocating it – an attorney…certifies that to
> the best of the person's knowledge, information, and belief, formed after an in-
> quiry reasonable under the circumstances:
>
>   (1) it is not being presented for any improper purpose, such as to harass, cause
>       unnecessary delay, or needlessly increase the cost of litigation;
>
>   (2) the claims, defenses, and other legal contentions are warranted by existing law
>       or by a nonfrivolous argument for extending, modifying, or reversing existing
>       law or for establishing new law….

Rule 11(c)(2) provides that a motion for sanctions "must be served under Rule 5, but it

must not be filed or be presented to the court if the challenged paper, claim, defense, contention,

or denial is withdrawn or appropriately corrected within 21 days after service…."  The Seventh Circuit Court of Appeals has held that the twenty-one day safe harbor "is not merely an empty formality."  *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1026 (7th Cir. 1999).  Instead, the safe harbor period shelters the offending party from Rule 11 sanctions if it withdraws or appropriately corrects the challenged item within twenty-one days.  *See* Fed. R. Civ. P. 11 cmt. 1993 Amendments ("[A] party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position….").

Rule 11 is intended to "give a litigant pause to 'stop, think, and investigate more carefully' before filing papers, thereby streamlining the administration and procedure of the federal courts."  *Zahran v. Cleary Bldg. Corp.*, 1999 U.S. App. LEXIS 14103, *11 (7th Cir. 1999).  Rule 11 sanctions are imposed against both the opposing party and its counsel, with both to be held jointly responsible.  *Noe v. Interstate Brands Corp.*, 188 F.R.D. 513, 515 (S.D. Ind. 1999).  The Seventh Circuit Court of Appeals has instructed that "[t]he district court in analyzing a Rule 11 sanction claim should determine if there has been a 'callous disregard for governing law or the procedures of the court…'"  *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (*citing Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992)).[9]

### B.  Facts Relevant to the Motion for Sanctions

In determining whether awarding fees and costs to Defendants is proper, the history surrounding Mr. Jones' pursuit of his claims is integral to the Court's analysis.  The Defendants first approached Mr. Jones' counsel regarding the merit of its client's claims through a letter sent just

---

[9] Defendants also rely upon 42 U.S.C. § 1988, which allows the prevailing party in a civil rights case to recover fees and costs.  Because, as discussed above, the Court finds that Mr. Jones has adequately alleged an ADEA retaliation claim against MSD at the pleadings stage, it denies Defendants' request for fees and costs under § 1988.

four days after Mr. Jones filed his original Complaint.  [Dkt. 23-1.]  The May 18, 2012 letter stated "[t]here is no basis in law for the complaint.  In fact, it is a frivolous filing."  [*Id.* at 1.]  It went on to state that: (1) Mr. Jones had no retaliation claim under Title VII because Mr. Jones did not participate in a Title VII proceeding; (2) Mr. Jones could not allege a material adverse employment action to support a retaliation claim; (3) the conspiracy claim failed because corporate entities and their agents cannot conspire together; and (4) the intentional infliction of emotional distress claim was "virtually identical" to the claims asserted in the ADEA/ADA Lawsuit and had no factual basis without the retaliation or conspiracy claims.  [*Id.* at 1-2.]  The letter concluded by asking counsel for Mr. Jones to dismiss the lawsuit or, if not, to provide Defendants' counsel with the case authority relied upon in signing and filing the Complaint "consistent with your Rule 11 obligations."  [*Id.* at 2.]   The letter cautioned that Defendants would "seek sanctions for having to deal with this nonsense."  [*Id.*]

In apparent response to the May 18, 2012 letter, Mr. Jones filed an Amended Complaint the very next day.  [Dkt. 6.]  Aside from adding some slightly more specific allegations, the Amended Complaint differed from the original Complaint in that Mr. Jones: (1) deleted specific references to Title VII in his retaliation claim, although added that he was entitled to "also bring a Retaliation claim under 42 U.S.C. § 1981," [*id.* at 4, ¶ 24]; (2) deleted specific references to the Bose Firm and Dr. Baer in the civil conspiracy claim, although still referred generally to "defendants" and did not specify against which defendants he was bringing that claim, and also added a reference to 42 U.S.C. § 1981, [*id.* at 5-8, ¶¶ 30-43]; (3) added a claim for deceit of attorney against the Bose Firm and Mr. Bailey, [*id.* at 8-9, ¶¶ 44-49]; and (4) added a claim for defamation per se, [*id.* at 9-10, ¶¶ 55-68].  So, in response to the May 18, 2012 letter, Mr. Jones *added*

claims and did nothing to address Defendants' counsel's concerns other than omitting references to Title VII in his retaliation claim.

Two months after Mr. Jones filed the Amended Complaint, Defendants filed their Motion for Judgment on the Pleadings, which outlined why Defendants believed Mr. Jones' claims were meritless.  [Dkt. 19.]  Rather than address head-on the issues Defendants raised, or voluntarily dismiss the claims that were clearly meritless, Mr. Jones responded to the motion but did not address at all the merits of: (1) his retaliation claim under § 1981; (2) his conspiracy claim under § 1981; (3) his intentional infliction of emotional distress claim; and (4) his defamation claim against MSD.  In connection with his state law claims, Mr. Jones conceded during briefing on the Motion for Sanctions that he had not filed a tort claim notice as required by the Indiana Tort Claims Act ("ITCA"), [dkt. 27 at 11, n.3], yet did not drop those claims until after both the Motion for Judgment on the Pleadings and the Motion for Sanctions had been fully briefed, and until after the Court instructed him at oral argument on the motions (where his counsel conceded that he would be dropping certain claims) to dismiss all claims he did not intend to pursue.  As for his attorney deceit claim, Mr. Jones did not address at all the Defendants' argument that he had failed to plead reliance on a false statement that induced him to act to his injury or damage – key elements of that claim.  Instead, Mr. Jones has pursued that claim up until the present.

Defendants filed their Motion for Sanctions on August 10, 2012, [dkt. 23], a few days after Mr. Jones responded to their Motion for Judgment on the Pleadings.  Defendants presumably realized that Mr. Jones was not planning to voluntarily dismiss any of his claims.  Although not attached to their Motion for Sanctions, Defendants' counsel advised at oral argument that it served the Motion for Sanctions at least twenty-one days before filing the motion, in compliance with Rule 11's safe harbor provision.  Mr. Jones' counsel did not dispute that representation.

After oral argument on the Motion for Judgment on the Pleadings and the Motion for Sanctions, Mr. Jones voluntarily dismissed: (1) all claims under 42 U.S.C. § 1981 against all defendants; (2) all conspiracy claims against all defendants; (3) all intentional infliction of emotional distress claims against all defendants; (4) all ADEA retaliation claims against individual defendants; (5) the defamation claim against MSD; and (6) all claims against Ms. Adams and Mr. Stinson.  [Dkts. 32; 34.]  The merit of each of these claims was discussed either in the May 18, 2012 letter, at length in Defendants' briefs in support of their Motion for Judgment on the Pleadings, or both.

### C.  Discussion

In support of its Motion for Sanctions, the Defendants argue that they are entitled to sanctions because: (1) there is no cause of action under 42 U.S.C. § 1981 for retaliation based on age discrimination, as Mr. Jones alleged in his Amended Complaint, [dkt. 24 at 6]; (2) there is no cause of action for age retaliation conspiracy under §§ 1981 and 1985, [*id.* at 6-7]; (3) there is no common law conspiracy claim when all of the alleged conspirators are acting within the scope of their agency for the same company, [*id.* at 7]; (4) there is no cause of action for conspiracy under § 1981 against Ms. Adams, Mr. Stinson, or Dr. Baer because they are all state actors, [*id.* at 7-8]; (5) the ITCA bars Mr. Jones' state law claims because Mr. Jones did not provide the requisite notice of claims that the ITCA requires, [*id.*]; (6) the common-law privilege protecting participants in a judicial proceeding bars Mr. Jones' state law claims, [*id.*]; and (7) Mr. Jones cannot identify any adverse action to support his retaliation claim because the alleged retaliatory conduct occurred during the course of litigation, [*id.* at 9].

In response, Mr. Jones asserts that: (1) Defendants cannot recover costs or fees under § 1927 because it does not cover the filing of an initial pleading, [dkt. 27 at 3-4]; and (2) Rule 11

sanctions are not appropriate because his claims are not frivolous – he properly pled his retaliation claim under the ADEA, his attorney deceit claim, and his defamation claim, [*id.* at 5-10], and the common-law privilege does not bar his attorney deceit and defamation claims, [*id.* at 10-11].

When determining whether to impose fees, costs, or sanctions, the Court is mindful of the pronouncement by the Seventh Circuit Court of Appeals that:

> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt.

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aero. Workers*, 802 F.2d 247, 255 (7th Cir. 1986).

In considering Defendants' Motion for Sanctions, the Court must ultimately consider the merits of the claims that Mr. Jones eventually voluntarily dismissed and also the claims that the Court has dismissed here, keeping in mind that under § 1927, "substantive meritlessness alone creates an automatic inference of improper purpose, even where the improper purpose is not identified." *Vandeventer v. Wabash Nat'l Corp.*, 893 F.Supp. 827, 842 (N.D. Ind. 1995).

### 1.  Claims Which the Court Has Dismissed Herein

At the outset, the Court finds that Mr. Jones' defamation claim against Dr. Baer was not so meritless as to warrant the award of fees, costs, or sanctions against Mr. Jones or his counsel for pursuing it. Mr. Jones had a colorable argument that placing the Baer Letter in his file was defamatory. The Court has ultimately dismissed that claim for the reasons discussed above, but based on an argument which primarily came to light at oral argument, after Mr. Jones' counsel conceded that submission of the Baer Letter in the course of the EEOC proceeding was privi-

leged, so could not constitute a publication that supported the defamation claim. The Court cannot find that dismissal of the defamation claim against Dr. Baer was so clear-cut that Mr. Jones or his counsel should be sanctioned for asserting and maintaining it.[10]

As for the other claim this Court dismissed – attorney deceit – the Court finds that this claim was frivolous from the start. Even cursory legal research would have indicated that a claim for attorney deceit under Ind. Code § 33-43-1-8, which arguably does not even create a separate cause of action but is intended to provide an avenue for seeking treble damages when coupled with a common law deceit claim, *Bronco Hazelton Co. v. Bryce Downey & Lenkov LLC*, 2011 U.S. Dist. LEXIS 100832, * 15 (S.D. Ind. 2011), requires that the plaintiff relied upon the attorney's statements and was induced to act to his detriment, *Harris*, 900 N.E.2d at 769. The Amended Complaint is devoid of any allegations regarding Mr. Jones' reliance on any statements by Mr. Bailey or the Bose Firm. Mr. Bailey and the Bose Firm pointed this out in their Motion for Judgment on the Pleadings, but Mr. Jones did not address this clear deficiency in his response or withdraw that claim.

The Court is disturbed that Mr. Jones' counsel would put forth a clearly frivolous claim against attorneys who were defending their clients in the ADEA/ADA Lawsuit, and cannot help but wonder what Mr. Jones' and his counsel's motives were in asserting, and continuing to pursue, this claim. The Court also notes the irony in Mr. Jones' counsel's argument at the hearing on the Motion for Sanctions that it was simply zealously protecting its client's interests when it

---

[10] The Court does note, however, that Mr. Jones' counsel's argument at the hearing that the Motion for Sanctions should be denied because it is "early in the litigation" rings hollow in the context of the defamation claim against Dr. Baer. Mr. Jones had the benefit of the tools of discovery in the original ADEA/ADA Lawsuit yet, when the Court asked whether Mr. Jones had propounded discovery in that case regarding possible disclosure of the Baer Letter or Mr. Jones' personnel file, Mr. Jones' counsel responded that he had not asked.

asserted the attorney deceit claim:  Indeed, the very basis for that claim is Mr. Bailey's and the Bose Firm's zealous protection of *their* clients' interests through defending the EEOC Charge.

The attorney deceit claim had no "plausible legal or factual basis," *Jolly Group, Ltd.*, 435 F.3d at 720, and, even assuming Mr. Jones' counsel did not know that, they should have.  The Court awards Mr. Bailey and the Bose Firm attorneys' fees and costs under Rule 11 and § 1927 incurred in connection with defending against the attorney deceit claim from the date Mr. Jones filed the Amended Complaint forward.[11]

### 2.  *Claims Which Mr. Jones Eventually Voluntarily Dismissed*

Mr. Jones voluntarily dismissed the following claims only after oral argument on the Motion for Judgment on the Pleadings and Motion for Sanctions: (1) civil conspiracy; (2) claims under § 1981; (3) intentional infliction of emotional distress; (4) defamation against MSD; (5) all claims against Mr. Stinson and Ms. Adams; and (6) ADEA retaliation claims against all individual defendants.  [Dkt. 35.]

### a.  *All State Law Claims Against Mr. Stinson and Ms. Adams*

Defendants repeatedly argued that claims against Mr. Stinson and Ms. Adams failed because they were acting within the scope of their employment.  Mr. Jones does not allege that Mr. Stinson and Ms. Adams were acting outside that scope, nor that their actions were malicious, as would be required for him to allege claims against them in their personal capacities.  Ind. Code § 34-13-3-5(c).  Further, because Mr. Jones sued Mr. Stinson and Ms. Adams in their capacities as

---

[11] While Mr. Jones is correct that § 1927 generally does not reach the filing of initial pleadings, that is not the case when the lawsuit is clearly meritless from the start.  *See Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983) (§ 1927 can reach the filing of the complaint where the lawsuit was legally meritless from the outset, and counsel should have known that it was).

employees of MSD, he was required to comply with the ITCA and file a notice of his claim.  Ind. Code § 34-13-3-8.  He acknowledges that he did not do so.  [Dkt. 27 at 11, n.3.]

Mr. Jones' counsel was, or at the very least should have been, aware that Mr. Jones could not maintain claims against Mr. Stinson and Ms. Adams in their official capacities.  Yet, he ignored Defendants' arguments and did not dismiss those claims until the Court, at oral argument, ordered Mr. Jones to file a motion to voluntarily dismiss claims he would not be pursuing.  [Dkt. 31.]  "[T]he mere filing of a civil lawsuit can have significant effects on a defendant, [and] [t]he public charges made in a civil lawsuit can cast a shadow over a defendant's reputation until the case is resolved."  *Doe v. Indiana Black Expo*, 923 F.Supp. 137, 141 (S.D. Ind. 1996).  Being named as a defendant in a lawsuit is a serious matter, and the Court is disturbed that the claims against Mr. Stinson and Ms. Adams lingered despite their obvious lack of merit.

The Court finds that the imposition of attorneys' fees and costs under § 1927 and Rule 11 is appropriate here – from the inception of those claims until their dismissal.  *See Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988) (awarding fees and costs under § 1927 and Rule 11, and stating that counsel cannot employ the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist") (citation omitted); *Vandeventer*, 893 F.Supp. at 849 (awarding sanctions under § 1927 and noting that plaintiff's filing of a response to defendant's motion for summary judgment, which continued to advance baseless claim, was "[p]articularly troubling"); *Noe*, 188 F.R.D. at 515 (awarding defendant Rule 11 sanctions for plaintiff's continued pursuit of claims against individuals which were clearly barred, and stating "a litigant who is of 'pure heart' and believes in good faith that her claims are valid, yet never objectively investigates the facts or the law before filing a complaint may very well be tempting fate under Rule 11").

*b.   All State Law Claims Against MSD*

The intentional infliction of emotional distress and defamation claims against MSD, already inappropriately asserted against Mr. Stinson and Ms. Adams as discussed above, were also frivolous.   Defendants pointed out in their Motion for Judgment on the Pleadings that these claims required Mr. Jones to first file a notice pursuant to the ITCA, and he finally acknowledged in his response to the Motion for Sanctions that he never filed such a notice.  [Dkt. 27 at 11, n.3.]  Mr. Jones and his counsel knew that MSD was never provided with the requisite notice under the ITCA, and Mr. Jones' counsel knew or should have known that such notice was a key prerequisite for the state law claims against MSD.  Bringing those state law claims anyway, and continuing to pursue them until ordered by this Court to narrow down his claims by dismissing ones he did not intend to pursue, is precisely the type of conduct § 1927 and Rule 11 are designed to prevent.  *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992) (§ 1927 sanctions appropriate where counsel pursued baseless claim despite receiving notice that claims were frivolous).

*c.   § 1981 Retaliation Claim*

A retaliation claim under § 1981 has only been recognized in the context of discrimination based on the categories covered by § 1981.  *See Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) ("The Supreme Court has held that § 1981 authorizes claims for retaliation, if one person takes action against another for asserting the right to substantive contractual equality provided by § 1981").  Mr. Jones' claims against Defendants in the ADEA/ADA Lawsuit have never included § 1981 claims, nor does Mr. Jones allege that they did.  The § 1981 retaliation claim was frivolous from its filing, and fees and costs under Rule 11 and § 1927 are appropriate.

### d.   Civil Conspiracy Claim Against Dr. Baer

As noted above, all state law claims against Mr. Stinson, Ms. Adams, and MSD were doomed from the start due to Mr. Jones' undisputed failure to file the required notice under the ITCA.  The civil conspiracy claim against Dr. Baer does not suffer from that same problem, as Mr. Jones alleges that Dr. Baer was merely an agent of MSD when he wrote the Baer Letter, and not an employee.  The Court finds that whether this claim was frivolous is a closer call.  Dr. Baer's defense to this claim rested on the common law privilege protecting statements made in the course of litigation, [dkt. 26 at 11].  Because it does not appear that Indiana courts have addressed application of the privilege either in the EEOC proceeding context, or in the context of a civil conspiracy claim, the Court cannot conclude that this claim was frivolous.[12]

### e.   ADEA Retaliation Claim Against Individual Defendants

It is not clear from the Amended Complaint exactly who Mr. Jones asserted his ADEA retaliation claim against.  Defendants addressed this claim in their Motion for Judgment on the Pleadings by stating "[t]o the extent [Mr.] Jones asserts ADEA retaliation claims against any defendant other than [MSD], they must be dismissed," and citing *Showalter v. Richmond*, 2010 U.S. Dist. LEXIS 18051, *6 (S.D. Ind. 2010) (holding an individual is not a proper ADEA defendant).  [Dkt. 26 at 4, n.1.]  Mr. Jones voluntarily dismissed his ADEA retaliation claim as against any individual defendants after oral argument on the motions.  [Dkt. 34.]  The Court

---

[12] Mr. Jones referred to § 1981 in his Amended Complaint in connection with his civil conspiracy claim, [dkt. 6 at 7-8, ¶ 43], but then did not even respond to Defendants' arguments in their Motion for Judgment on the Pleadings regarding that claim and failed to voluntarily dismiss that claim until after oral argument, [dkt. 32].  Mr. Jones' counsel's failure to dismiss his § 1981 conspiracy claims against MSD and Dr. Baer, even after apparently abandoning them by failing to address them in his response to the Motion for Judgment on the Pleadings, was unreasonable and warrants the award of fees and costs incurred in defending the § 1981 conspiracy claim from the start.  Like his § 1981 retaliation claim, Mr. Jones' civil conspiracy claim – without underlying conduct alleged to have violated § 1981 – could not survive and was frivolous.

finds that, because it is not clear whether Mr. Jones ever intended to assert the ADEA retaliation claim against any individuals, and since Defendants addressed the viability of that claim succinctly and without extensive briefing, fees and costs in connection with defending against any such claim are not warranted.

## IV.
### CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, [dkt. 18], is **GRANTED IN PART** and **DENIED IN PART**.  As discussed above, the Motion is denied only as to Mr. Jones' ADEA retaliation claim against MSD relating to MSD's placement of the Baer Letter in Mr. Jones' personnel file.  That claim will proceed.  All other claims are **DISMISSED WITHOUT PREJUDICE**.  Defendants' Motion for Sanctions, [dkt. 23], is **GRANTED IN PART** and **DENIED IN PART**.  Counsel are **ORDERED** to confer with the Magistrate Judge to try to reach an agreement regarding a reasonable amount of attorneys' fees, costs, and expenses that Defendants incurred and for which Mr. Jones and his counsel should be responsible based on the foregoing Order.  If they cannot reach an agreement, the Magistrate Judge may set an appropriate briefing schedule.

10/25/2012

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Adam  Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP
jmayes@boselaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Yang Kyoung  Nam
ROBERTS & BISHOP
lounam77@gmail.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrjustice@aol.com

Karen G. Sharp
BOSE MCKINNEY & EVANS, LLP
ksharp@boselaw.com